UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
WILSON J. BASTON, :
: 10 CV 4344 (HB)
Plaintiff, : 07 CR 750 (HB)
: **AMENDED**
-against- : **OPINION & ORDER**
:
UNITED STATES OF AMERICA, :
:
Defendant. :
-----------------------------------------------------------------------x

**Hon.  HAROLD BAER, JR., District Judge:[1]**

Pro se petitioner, Wilson J. Baston ("Petitioner"), brings this petition for a writ of habeas corpus to vacate, set aside, or correct his federal criminal sentence pursuant to 28 U.S.C. § 2255. Petitioner is currently serving 17 concurrent prison terms of 135 months, after having pled guilty to multiple counts of mail and wire fraud.  Petitioner has also requested an evidentiary hearing. For the reasons set forth below, the petition and request for an evidentiary hearing are denied.

## I. BACKGROUND

Petitioner operated a company that was ostensibly in the business of purchasing distressed properties and reselling them for a profit.  However, he used his company to defraud investors who would invest money in exchange for promissory notes, which stipulated high return rates and short investment periods.  Initially, investors received returns on their investments, which they reinvested in the company.  As the size of investments grew, Petitioner ceased to return the money when the notes came due.  An investigation by the U.S. Postal Service led to his indictment and arrest.

On March 5, 2008, Petitioner pled guilty pursuant to a plea agreement that contained a Stipulated Sentencing Guidelines Range of 87 to 108 months and indicated that the loss amount would be at least $7 million but less than $20 million, with the specific amount to be calculated prior to sentencing.  These ranges were calculated based on data known to the U.S. Probation Department at the time.  Additional victims continued to make themselves known to the Government and the loss amount grew.  Before the sentencing hearing, the Probation

---

[1] Jason Douglas Barnes, a second-year student at New York University School of Law and a fall 2010 and spring 2011 intern in my Chambers, provided substantial assistance in researching and drafting this opinion.

1

Department issued a Final Pre-Sentence Report ("Final PSR") that accounted for the increased amount of losses and concluded that Petitioner defrauded 185 victims of $22,319,633.57. Accordingly, the Final PSR recommended a restitution amount of $22,319,633.57 and a Sentencing Guidelines Range of 108 to 135 months.

In Petitioner's sentencing memorandum, Petitioner's attorney, Matthew Kluger ("Kluger"), acknowledged that the Final PSR's calculation was a more accurate reflection of the actual loss attributable to Petitioner's conduct, but requested that Petitioner be sentenced to serve 87 months – the minimum number of months specified in the plea agreement – or less. The Government's sentencing memorandum noted the discrepancy between the recommendations in the Final PSR and the plea agreement, and requested a sentence of 108 months in order to comport with both. The Court also received a number of written victim impact statements prior to sentencing. The parties made the same arguments at the sentencing hearing as they did in their written submissions. I reminded the parties that the Court is not bound by the plea agreement and, after hearing testimony from several victims, I announced a sentence of 135 months and a final restitution order of $22,396,633.57.

Petitioner appealed, arguing that his sentence should be vacated on grounds that the Government breached the plea agreement, that his counsel provided constitutionally ineffective assistance, and that the restitution order was improper. *See United States v. Baston*, 355 F. App'x 530, 531-32 (2d Cir. 2009). The Second Circuit Court of Appeals affirmed the judgment below. *Id*. at 533. The Court of Appeals found that Petitioner forfeited his claim that the Government breached the plea agreement by having failed to raise it at the appropriate time. *Id*. at 533. It also found no plain error which would make the restitution order improper. *Id.* at 532. The Court of Appeals dismissed Petitioner's claim for ineffective assistance of counsel without prejudice, on the grounds that the Supreme Court has stated a preference for resolving such claims in a habeas petition, *id*. (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)), and consequently that ground is asserted by Petitioner here.

On June 2, 2010, Petitioner brought this habeas corpus petition under 28 U.S.C. § 2255. Petitioner alleges two grounds for relief. First, he claims to have received ineffective assistance of counsel at trial because his trial counsel (a) breached the plea agreement by conceding at sentencing that the loss and restitution amounts were accurate and (b) failed to investigate and

2

correct errors in the loss and restitution amounts.  Second, Petitioner claims that the calculation of the restitution order and loss amount were inaccurate.

## II. DISCUSSION

In a petition under § 2255, the Petitioner must show that the sentence: "(1) was imposed in violation of the Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack."  28 U.S.C. § 2255(a) (2010).

### A. Restitution Order

The Second Circuit has held that "a convicted defendant who receives an allegedly erroneous fine… cannot seek post-conviction relief under § 2255, and neither should a petitioner who is both fined and imprisoned have an opportunity to assert an identical fine-related claim under § 2255."  *Kaminski v. United States*, 339 F.3d 84, 88, 91 (2d Cir. 2003) (affirming the district court's dismissal of a petition challenging a restitution order for lack of jurisdiction pursuant to § 2255).  Here, Petitioner's challenge to the restitution order is independent of his challenge to the sentence on the basis of ineffective assistance of counsel.  However, "[r]econsideration [of issues decided on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant."  *Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009) ("We have held that a section 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'") (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)).  Here, the Court of Appeals ruled there was no error with respect to the restitution order.  *Baston*, 355 F. App'x at 532. Therefore, this issue is barred from litigation on Petitioner's § 2255 petition.

### B. Loss Amount

Petitioner also argues that the loss amount used at sentencing was inaccurate.  To the extent that small discrepancies may exist that the Court of Appeals would not recognize as plain error, controlling case law states that "a sentencing court is not required to compute the loss resulting from a fraud offense 'with precision.'  The court need only make a reasonable estimate of the loss."  *United States v. Kumar*, 617 F.3d 612, 632 (2d Cir. 2010) (internal citation omitted); *see also United States v. Davis*, 41 F. App'x. 493, 496 (2d Cir. 2002).  Likewise, it is sufficient for the Court to adopt the loss amount findings in the Final PSR.  *See United States v. Eyman*, 313 F.3d 741, 744 (2d Cir. 2002) (holding the district court's loss findings for the

sentencing hearing were sufficient, where its comments established that it had adopted the findings in the PSR). Here, the Court expressly relied on the Final PSR's loss findings at sentencing, which were repeatedly recalculated by the Probation Department as additional victims came forward and using the most accurate information available. *See* Sentencing Hr'g Tr. 39-40. Although Petitioner challenges the accuracy of several figures relied upon by the government when calculating the loss amount and argues that the actual loss is less than $20 million, he does not clearly demonstrate any discrepancy so great that it would render the loss amount as calculated by the Probation Department unreasonable.

### C. Ineffective Assistance of Counsel[2]

The Supreme Court has articulated the requirements of a claim for ineffective assistance of counsel: (1) counsel's representation must "[have fallen] below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *see also United States v. Kurti*, 427 F.3d 159, 163 (2d Cir. 2005). The Court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). Furthermore, "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

#### 1. Reasonableness of Representation

Kluger's representation of Petitioner did not fall below an objective standard of reasonableness, as measured by prevailing professional norms. The Supreme Court, in *Strickland,* provides that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. The reasonableness of strategic choices cannot be decided with the benefit of hindsight and the Court must "evaluate the conduct from counsel's perspective at the time" the choice was made. *Id.* at

---

[2] A claim for ineffective assistance of counsel is based on the Sixth Amendment's statement that a criminal defendant "shall enjoy the right… to have the assistance of counsel," U.S. Const. amend. VI, and a line of U.S. Supreme Court cases requiring *effective* assistance of counsel. *See, e.g., McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

689. Courts have denied ineffective assistance claims in situations, where counsel conceded certain evidence at trial, because it was a strategic decision to make the concession. *See id.* at 699 (holding counsel's decision not to present or investigate certain evidence was strategic and virtually unchallengeable); *United States v. Gaskin*, 364 F.3d 438, 468 (holding counsel's stipulation to defendant's signature on trial exhibits was a strategic choice and decisions to stipulate to evidence are strategic as a rule); *United States v. Berkovich*, 168 F.3d 64, 67-68 (2d Cir. 1999) (holding counsel's decision to enter into a global stipulation was part of a "reasonable trial strategy").

Kluger's concession of the loss amount, with which Petitioner takes issue, was a strategic choice, made to avoid the risk of an even higher loss amount and perhaps an even higher sentence. As Kluger explained in his letter supporting the Government's current memorandum, "the figures were… not only accurate but continuing to increase" and "Baston had significantly more to lose by challenging the revised loss figures." Resp't's Br. Ex. K, at ¶ 8.[3] In his letter, Kluger also implies that he discussed this decision with Petitioner beforehand and gained his consent. Resp't's Br. Ex. K, at ¶ 6.[4] Additionally, while conceding the amount, Kluger also argued that in the interest of "fundamental fairness," the Court should adhere to the terms of the plea agreement. Sentencing Hr'g Tr. 8. Therefore, Kluger's strategic choice to concede the loss amount and efforts to protect Petitioner in relation to that decision do not fall below an objective standard of reasonableness.

Petitioner also insists that concession of the loss amount was a breach of the plea agreement and that such breach constitutes ineffective assistance of counsel. However, the plea

---

[3] Kluger's letter states:
> Mr. Baston had significantly more to lose by challenging the revised loss figures … the figures were, for the most part, not only accurate but continuing to increase as time went on. Faced with this reality, conceding a two-point enhancement seemed a small price to pay then [sic] the alternative, which was a loss of three (3) acceptance of responsibility points, a loss figure which would have almost certainly been enhanced by two points following a *Fatico* hearing, the inclusion of several other potential Guideline enhancements and a sentence imposed by a judge who had just seen and heard from a parade of irate victims. I also considered the negative effects that a full-blown *Fatico* hearing would have had on other, more compelling § 3553(a) arguments as well as the intangible value of candor and credibility.

Resp't's Br. Ex. K, at ¶ 8.

[4] "[I]t is my practice to discuss all significant strategy decisions with my clients and seek their consent beforehand. A concession like the one made in the instant case would not have been made without discussing it thoroughly with my client first, explaining its strategic underpinnings, and seeking his consent." Resp't's Br. Ex. K, at ¶ 6. Note, however, that Kluger does not directly state that he did, in fact, discuss this with Baston.

5

agreement itself recognized that "neither the Probation Department nor the Court is bound by [the] Guidelines stipulation," and "[n]othing in the agreement limits the right of the parties… to make any arguments regarding where within the Stipulated Guidelines Range of 87 to 108 (*or such other range as the Court may determine*) the defendant should be sentenced." Resp't's Br., Ex. A (emphasis added).  Furthermore, Petitioner argued on direct appeal that the Government had breached the plea agreement for essentially the same reasons that he now argues Kluger breached it, an argument which the Court of Appeals rejected.  *See Baston*, 355 F. App'x at 532.

### 2. Reasonable Probability of a Different Result

Turning to the second prong of Petitioner's ineffective assistance claim, even if Kluger's representation did fall below the legal standard, there is no reasonable probability that the result of the sentencing would have been different but for Kluger's concession of the loss amount.  *See, e.g.*, *Albanese v. United States*, 415 F. Supp. 2d 244, 250-51 (S.D.N.Y. 2005) (holding counsel's failure to challenge loss amount in plea agreement was not ineffective assistance because it did not bind the court and was supported by the Government's evidence); *United States v. Patasnik*, 89 F.3d 63, 67 (2d Cir. 1996) (holding counsel's failure to challenge loss amount during sentencing did not prejudice defendant).

The Court was neither bound by the plea agreement nor by the Guidelines, which are in part contingent upon the loss amount, and, as such, Kluger's concession of the loss amount did not necessarily influence the outcome.  The Sentencing Guidelines are not mandatory.  *See United States v. Booker*, 543 U.S. 220, 249-254 (2005).  Rather, they are only one of several factors to be considered in sentencing.  *See* 18 U.S.C. § 3553 (2010).  The Court had discretion to decide the sentence, and the Court used its discretion and supported it with reasons.  Indeed, as Kluger states in his letter in support of the Government's brief, the alternative of challenging the loss amount and holding a *Fatico* hearing could have had a negative effect on the ultimate sentence; it would have entailed testimony under oath from victims concerning the loss amount and negotiated the possibility for an effective appeal to leniency.  Therefore, Petitioner was not prejudiced by Kluger's actions at sentencing.  The Court acknowledged Kluger's request for a lesser sentence, as well as his concession of the loss amount, but concluded based on other factors that a higher sentence was appropriate.

### D. Evidentiary Hearing

An evidentiary hearing on this petition is denied. Section 2255 states, in relevant part, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall... grant a prompt hearing thereon." 28 U.S.C. § 2255(b). However, as the statute indicates, where those files and records are conclusive, the Court may decline to hold an evidentiary hearing in its discretion. *See, e.g., Sanders v. United States*, 1 F. App'x 57, 59 (2d Cir. 2001) (holding the sentencing record was sufficient to make determination); *United States v. Stantini*, 85 F.3d 9, 17 (2d Cir. 1996) (petitioner had not provided evidence); *Newfield v. United States*, 565 F.2d 203, 207-08 (2d Cir. 1977) (record was conclusive). As the preceding discussion elucidates, the record conclusively shows that Baston's case does not meet even the low threshold for an evidentiary hearing.

### III. CONCLUSION

For the reasons set forth above, Petitioner's petition for writ of habeas corpus is DENIED and his request for an evidentiary hearing is DENIED. The Clerk of the Court is directed to close this matter and remove it from my docket. As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253.

New York, New York
_____, 2011

SO ORDERED.

_____
Hon. Harold Baer, Jr.
U.S. District Judge